UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

TIMOTHY W. HESS, No. 19-11925-ta7

    Debtor.

## **OPINION**

On February 3, 2020, the Court held a final hearing on the chapter 7 trustee's objection to Debtor's homestead exemption. The basis for the objection is that Debtor does not own the house he seeks to exempt. Debtor responded that he leases the house, pays the mortgage, pays for upkeep, and owns the limited liability company that owns the house. Based on the evidence taken at the final hearing and being otherwise sufficiently advised, the Court concludes that the trustee's objection is meritorious and should be sustained.

## I.    FACTS

The Court finds:[1]

In 2009, Debtor bought a house at 13445 Panorama Loop NE, Albuquerque, New Mexico 87123. He has lived there since.

Although Debtor bought the house in his own name, a few months later he conveyed it to BHA's Property 13445 LLC, a New Mexico limited liability company ("BHA 13445").[2] Debtor

---

[1] The Court took judicial notice of its docket and of business entity searches from the New Mexico Secretary of State website. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may sua sponte take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same); *L'Garde, Inc. v. Raytheon Space and Airborne Systems*, 805 F. Supp. 2d 932, 937 (C.D. Cal. 2011) (court may take notice of record searches from state secretary of state website).

[2] BHA 13445 was organized on February 25, 2009. BHA apparently is an abbreviation of Brave Heart Assets.

is the only member of BHA 13445. He testified that he conveyed the house to a limited liability company for tax purposes.

In the past Debtor has owned investment properties. Apparently for the purpose of limiting potential liability, he conveyed the properties to limited liability companies he owned.[3] Debtor also transferred his IRA to a limited liability company (Snowgoose LLC); he owns a limited liability company whose sole asset is a small utility trailer (Fargo Enterprises LLC); and he owns another limited liability company whose only asset is a bank account of unknown value (Braveheart Assets LLC). Finally, Debtor owns a corporation whose only asset is a checking account of unknown value (Guard Bird Inc.).

BHA 13445 conveyed the house back to Debtor in 2016 because he wanted to refinance the mortgage. The refinanced note and mortgage are in the name of Debtor, not BHA 13445. Debtor reconveyed the house to BHA 13445 in July 2018.

The Debtor filed this case on August 21, 2019. Debtor filed his bankruptcy schedules and statement of financial affairs on the petition date. On Debtor's Schedule A/B, Debtor checked that he did not "own or have any legal or equitable interest in any residence, building, land, or similar property." However, Debtor listed a 100% ownership interest in BHA 13445, along with the following other entities:

> BHA Property 503 LLC;[4]
> Braveheart Assets LLC;[5]
> BHAs Property 566 LLC;[6]
> Fargo Enterprises LLC;
> Snowgoose LLC;[7] and
> Guard Bird Inc.

---

[3] For example, BHA's Property 503 LLC owns a house at 503 Pecos Loop SE, Rio Rancho, NM. BHA's Property 566 LLC once owned a 4-plex at 566 Jane St. NE, Albuquerque, NM.
[4] Organized on February 25, 2009.
[5] Organized on July 31, 2006.
[6] Organized on February 25, 2009.
[7] Organized on April 14, 2008.

Of Debtor's total assets of $165,536.51, $5,957 (3.6%) is owned personally and $159,579.51 (96.4%) is owned by the scheduled limited liability companies and corporation.

Debtor stated that BHA 13445 "owns Debtor's principal residence at 13445 Panorama [Loop] NE, Albuquerque, NM 87123. Value of residence is $119,000. Balance due on mortgage to Chase is $77,869. House need[s] new roof and stucco."

On Debtor's Schedule C, he claimed an exemption of $53,452[8] in the house under New Mexico's homestead exemption, N.M.S.A. § 42-10-9.

Debtor did not disclose any executory contracts or unexpired leases on his Schedule G.

On October 1, 2019, the chapter 7 trustee objected to Debtor's claimed homestead exemption, arguing that Debtor could not claim the exemption because he did not own the house. Debtor responded on October 22, 2019:

> Debtor is and has always been the sole member and managing member of the LLC [BHA 13445] since its formation.
>
> At the time of the conveyance to the LLC, the subject property was and remains encumbered by a mortgage to JPMorgan Chase Bank. Debtor was and remains solely obligated to pay the note to JPMorgan Chase Bank secured by the subject property.
>
> Since the time of its original acquisition by the Debtor and the conveyance of the property to the LLC, Debtor has continuously occupied dwelling on the subject property.
>
> Since the conveyance of the property to the LLC, Debtor has individually paid each and every monthly mortgage payment, all the real estate taxes, kept the subject property insured, and has maintained the subject property in exchange for his right to occupy the dwelling on subject property owned by the LLC. Debtor maintains that this agreement is a lease and entitles him to claim the subject property as exempt from trustees in insolvency proceedings under the provisions of the New Mexico Homestead Exemption law quoted above.

---

[8] It is not clear where this figure came from. The value of the house less the Chase mortgage is $41,131.

-3-
Case 19-11925-t7    Doc 33    Filed 03/27/20    Entered 03/27/20 14:07:28 Page 3 of 11

The Court held a final hearing on the trustee's objection on February 3, 2020. Debtor was the only witness. Debtor was credible and straightforward in his testimony. Debtor testified that his lease of the house was an oral month-to-month lease.[9]

## II. DISCUSSION

A. Is the House Property of the Estate?

11 U.S.C. § 541 lists the assets that become estate property when a petition is filed. It states in part:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case….

On the petition date, the house was wholly owned by BHA 13445, and BHA 13445 was wholly owned by Debtor. Thus, while Debtor's BHA 13445 membership interest clearly became estate property, the house did not. *See, e.g., Fowler v. Shadel*, 400 F.3d 1016, 1019 (7th Cir. 2005) ("The corporate assets of [individual debtor's corporation] Inc. are not property of the debtor and therefore cannot become property of Fowler's bankruptcy estate. Hence, the question of an exemption does not arise"); *In re Ealy*, 307 B.R. 653, 657 n.1 (Bankr. E.D. Ark. 2004) ("corporate assets are generally not property of an individual debtor's bankruptcy estate"); *In re Rodio,* 257 B.R. 699 (Bankr. D. Conn. 2001) (property of LLC in which Debtor is a member is not property of Debtor's estate); *Manson v. Friedberg*, 2013 WL 2896971, at *3 (S.D.N.Y.) (same); *In re Strak*, 2018 WL 6566622, at *2 (Bankr. D.N.J.); *In re Dieffenbacher*, 556 B.R. 79, 85 (Bankr. E.D.N.Y. 2016). The only asset in the estate directly related to the house is Debtor's interest as the tenant under the oral month-to-month lease.

---

[9] The Debtor should amend his Schedule G to reflect the lease.

B. <u>The New Mexico Homestead Exemption</u>.

If property is part of their bankruptcy estate, New Mexico debtors may elect to claim either state or federal exemptions to exempt some of that property. *See* 11 U.S.C. § 522(b)(2).[10] Debtor elected to use the New Mexico exemptions, N.M.S.A. § 42-10-1 et seq. These include New Mexico's homestead exemption:

> Each person shall have exempt a homestead in a dwelling house and land occupied by the person or in a dwelling house occupied by the person although the dwelling is on land owned by another, provided that the dwelling is owned, leased or being purchased by the person claiming the exemption. Such a person has a homestead of sixty thousand dollars ($60,000) exempt from attachment, execution or foreclosure by a judgment creditor and from any proceeding of receivers or trustees in insolvency proceedings and from executors or administrators in probate. If the homestead is owned jointly by two persons, each joint owner is entitled to an exemption of sixty thousand dollars ($60,000).

N.M.S.A. § 42-10-9.

New Mexican exemption statutes are to be construed liberally in favor of debtors. *In re Carlson*, 303 B.R. 478, 482 (10th Cir. BAP 2004) ("to effect their humanitarian purposes exemption laws must be liberally construed in favor of the claimant of an exemption"); *In re Holley*, 2019 WL 4307565, at *3 (Bankr. D.N.M.); *In re Johnson*, 593 B.R. 331, 338 (Bankr. D.N.M. 2018); *In re Bushey*, 559 B.R. 766, 774 (Bankr. D.N.M. 2016).

---

[10] Section 522(b)(2) gives debtors the option to elect the state or federal exemptions "unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize." 36 states exercised this "opt out" right, so in those state only the state law exemptions may be used. Brown, Ahern, and MacLean, Bankruptcy Exemption Manual § 4:1 (June 2019 Update). New Mexico is not one of the 36 "opt-out" states. Four of the opt-out states later reversed course.

C. <u>What Estate Property Can be Exempt under the New Mexico Homestead Exemption</u>?

As shown above, the house is not property of the estate. Debtor lives in the house, however, under a claimed oral month-to-month lease.[11] Debtor urges that his leasehold interest is enough to allow him to exempt the house.

> There is no New Mexico case law interpreting the portion of the New Mexico homestead exemption statute relating to a dwelling house a person occupies that is "leased or being purchased by the person claiming the exemption."

*In re Cohen*, 2012 WL 400719, at *3 (Bankr. D.N.M.). It is clear, however, that debtors may not exempt property that is not in the estate. In *Owen v. Owen*, 500 U.S. 305 (1991) the Supreme Court stated:

> No property can be exempted (and thereby immunized), however, unless it first falls *within* the bankruptcy estate. Section 522(b) provides that the debtor may exempt certain property "from property of the estate"; obviously, then, an interest that is not possessed by the estate cannot be exempted.

500 U.S. at 308 (emphasis in original); *see also In re Rogers*, 513 F.3d 212, 225 (5th Cir. 2008) ("it is a well-recognized principle of law that one's homestead right in property can never rise any higher than the right, title, or interest that he owns in the property attempted to be *impressed* with a homestead right") (emphasis in original); *In re Casserino*, 290 B.R. 735, 740 (9th Cir. BAP 2003) ("an owner of a possessory interest in leased property in which he resides may claim a homestead exemption to the extent of that interest"); *Cohen*, 2012 WL 400719, at *4 ("the amount of a debtor's homestead exemption is necessarily limited to the value of the estate the debtor holds in the property at issue").

---

[11] The oral lease may be somewhat of an *ex post facto* construct. It is difficult to negotiate a lease with yourself. Until Debtor filed this case and had to defend against the trustee's objection to the homestead exemption, he likely did not give much thought to how to characterize his right to live in the house.

Here, Debtor's estate includes the tenant's interest in an oral month-to-month lease of the house. Debtor may claim the homestead exemption to the extent of the value of the estate's interest in the lease. Unfortunately for Debtor, that value is little or nothing. A month-to-month lease may be terminated by 30 days prior written notice from the owner to the resident. N.M.S.A. § 47-8-37(B) ("The owner or the resident may terminate a month-to-month residency by a written notice given to the other at least thirty days prior to the periodic rental date specified in the notice."). Because the trustee controls BHA 13445 via Debtor's 100% ownership interest, the trustee could easily terminate the lease at any time, giving Debtor 30 days to vacate. Debtor's interest in the oral lease therefore has no significant value.

D.  The "Form Over Substance" Argument.

At the final hearing there was argument about whether it would be exalting form over substance to say that Debtor did not own the house.[12] The issue merits discussion.

Individuals who transfer assets to corporations, limited liability companies, or similar entities know there are benefits and drawbacks to doing so. One obvious potential benefit is limited liability. There may also be tax, accounting, and estate planning advantages. Among the drawbacks, however, is the fact that the individual no longer owns the assets.

For valid and time-honored reasons, courts do not lightly disregard the "corporate veil" between the owner and the entity:

> A basic proposition of corporate law is that a corporation will ordinarily be treated as a legal entity separate from its shareholders. Shareholders can thus commit limited capital to the corporation with the assurance that they will have no personal liability for the corporation's debt. . . . Only under special circumstances will the courts disregard the corporate entity to pierce the corporate veil holding individual shareholders or a parent corporation liable. This is done where the corporation was set up for fraudulent purposes or where to recognize the corporation would result in injustice. *Scott Graphics, Inc. v. Mahaney,* 89 N.M. 208, 211, 549 P.2d 623, 626 (Ct. App.), *cert. denied,* 89 N.M. 322, 551 P.2d 1369 (1976).

---

[12] Debtor did not press this argument.

*Scott v. AZL Resources, Inc.,* 107 N.M. 118, 121 (S. Ct. 1988).[13]

The *Scott* case addressed "straight" veil piercing, i.e., disregarding the corporate veil so creditors of the corporation may gain access to the assets of the corporation's shareholder(s). Here, for Debtor to obtain the benefits of the homestead exemption, the Court would have to "reverse pierce" the corporate veil, i.e., disregard the corporate veil for the benefit of the *owner's* creditors, not the corporation's creditors. *See, e.g., Floyd v. I.R.S.,* 151 F.3d 1295, 1298-99 (10th Cir. 1998) (discussing the differences between "standard" and "reverse" piercing).

Furthermore, not only would the Court have to reverse pierce, it would have to sanction an "inside" reverse piercing (i.e., Debtor seeks to pierce the veil he created), as opposed to an "outside" reverse piercing (sought by a creditor of the owner). *Id.*

In *Brooklyn Navy Yard Cogeneration Partners, L.P. v. Superior Court (Parsons Corp.),* 70 Cal. Rptr. 2d 419, 425-26 (Cal. App. 1997), the court discussed inside reverse piercing:

> We note there is some authority for the proposition a corporation may not assert the alter ego doctrine to deny its own legal existence. As the court stated in *Communist Party v. 522 Valencia, Inc.* (1995) 35 Cal.App.4th 980, 41 Cal.Rptr.2d 618,"[A]lter ego is used to prevent a corporation from using its statutory separate corporate form as a shield from liability only where to recognize its corporate status would defeat the rights and equities of third parties; it is not a doctrine that allows the persons who actually control the corporation to disregard the corporate form." (*Id.* at p. 994, 41 Cal.Rptr.2d 618.) Usually this position is expressed in terms of estoppel. "'Parties who determine to avail themselves of the right to do business by means of the establishment of a corporate entity must assume the burdens thereof as well as the privileges.'" (*Shapoff v. Scull* (1990) 222 Cal.App.3d 1457, 1470, 272 Cal. Rptr. 480, quoting from *Aladdin Oil Corp. v. Perluss* (1964) 230 Cal.App.2d 603, 614, 41 Cal. Rptr. 239.)

---

[13] The concept of the "corporate veil" applies with equal force to limited liability companies. *See Hodge v. Strong Built Intern., LLC*, 159 So. 3d 1159, 1163 (La. App. 2015); *In re Breece*, 487 B.R. 599 (6th Cir. BAP 2013); *In re Kane*, 2011 WL 2119015 at *3 (Bankr. D. Mass. 2011).

*See also Liberty Prop. Trust v. Republic Props. Corp*, 577 F.3d 335, 340 (D.C. Cir. 2009) ("Having taken advantage of the corporate form to purchase limited partnership units, defendants may not disregard that form to avoid liability for the same transaction."); *Spartan Tube & Steel, Inc. v. Himmelspach (In re RCS Engineered Prods. Co.)*, 102 F.3d 223, 226 (6th Cir. 1996) (Michigan would not permit reverse piercing; corporate veil is never pierced "for the benefit of the corporation or its stockholders"); *In re ALT Hotel, LLC*, 479 B.R. 781, 801-02 (Bankr. N.D. Ill. 2012) ("courts 'are overwhelmingly hostile' to inside reverse piercing") (citation omitted); *Roberts v. State, Department of Revenue*, 162 P.3d 1214, 1221 (Alaska 2007) (the court declined to allow an individual to pierce the veil of his own corporation "when it serves his or her interest"); 1 William Mead Fletcher, Cyclopedia of the Law of Corporations, § 41.20, n.9 and accompanying text ("The corporate entity will not be disregarded merely for the benefit of the corporation or the individual shareholders when the corporate form works to their detriment or disadvantage.").

There is some contrary authority. In *Cargill v. Hedge*, 375 N.W.2d 477, 480 (Minn. 1985), the Minnesota Supreme Court allowed a farmer to pierce the veil between her and her farming corporation so she could claim a homestead exemption. This decision was followed in *State Bank in Eden Valley v. Euerle Farms, Inc.*, 441 N.W.2d 121 (Minn. App. 1989).

The cases that have allowed "reverse piercing" so debtors may obtain the benefit of a homestead exemption appear to come exclusively from Minnesota. *See The Reverse Pierce Doctrine: Applying Appropriate Standards*, 16 J. Corp. L. 33 (1990); *In re Checiek*, 492 B.R. 918, 921 (Bankr. M.D. Fla. 2013) (citing *Cargill* but holding that Florida law would not allow a "reverse veil pierce" "absent evidence that the corporate form was used for a fraudulent or improper purpose"); *Hall v. City of Clarksburg*, 2016 WL 5680218, at *7 (D.W.V.) (declining to follow

*Cargill* and holding that debtor, who had long benefitted from the protections of the corporate structure, could not disregard the structure when it suited him).

Whether a federal court may sanction "inside" or "outside" reverse piercing is a question of state law. *Floyd*, 151 F.3d at 1298-99. The *Floyd* court stated:

> The [creditor] has presented no authority suggesting that Kansas does or would recognize an outside reverse-piercing claim, and our own review of Kansas law provides no authoritative support for that proposition. *See Cascade,* 896 F.2d at 1577 (holding that, "[a]bsent a clear statement" by state supreme court adopting outside reverse-piercing theory, federal court will not reverse pierce).

151 F.3d at 1299 (citing *Cascade Energy and Metals Corp. v. Banks*, 896 F.2d 1557, 1577 (10th Cir. 1990)). This view was moderated in *United States v. Badger*, 818 F.3d 563 (10th Cir. 2016), where the court held:

> Defendants suggest that *Cascade* prohibits us from recognizing reverse piercing in Utah unless the Utah Supreme Court expressly applies it in a decision. But they read too much into an "inclin[ation]" in that case. *Id.* The panel did not purport to (and could not) reverse our precedents imposing on the court the duty to predict how the Utah Supreme Court would rule. *See, e.g., Daitom,* 741 F.2d at 1574; *Gomez,* 726 F.2d at 652; *Herndon,* 716 F.2d at 1332; *City of Aurora,* 599 F.2d at 386. None of these cases say that we can adopt a doctrine only if the state's highest court has endorsed it in a "clear statement."

818 F.3d at 570.

New Mexico appellate courts have addressed neither inside nor outside reverse piercing. The Court predicts that it is unlikely New Mexico appellate courts would sanction inside reverse piercing except, if ever, in the most compelling circumstances. The Court concludes that the circumstances here are not compelling enough. There are equities favoring Debtor's position, namely his relative lack of sophistication in business matters, the lack of any improper motives or pre-petition shenanigans, and the strong New Mexico policy in favor of the homestead exemption. There are countervailing equities, however, most notably the rights of creditors and Debtor's conscious decision over the last 14 years to shelter his assets behind the corporate veil. The balance

-10-
Case 19-11925-t7    Doc 33    Filed 03/27/20    Entered 03/27/20 14:07:28 Page 10 of 11

of the equities does not tip the scale in favor of the extraordinary equitable relief of inside reverse piercing.

### III. CONCLUSION

This is in some ways an unfortunate case. Debtor appears to fit within the paradigm of the "honest but unfortunate" debtor. He had the questionable practice, however, of putting almost all his assets in limited liability companies or corporations. The practice may have made sense for his investment real estate but probably not for his house. Conveying the house to BHA 13445 removed it from Debtor's bankruptcy estate, thus negating what would otherwise have been a valid homestead exemption. Debtor's oral month-to-month lease is not enough to allow him to exempt the house. The alternative "form over substance" argument also must be overruled; the Court predicts that New Mexico law would not permit inside reverse piercing in this case.

By a separate order, the Court will sustain the trustee's objection to Debtor's claimed homestead exemption.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: March 27, 2020

Copies to: Counsel of Record